# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HARRISON CAPEL,                          )
                                         )
BROOKE NORMAN,                           )
                                         )
    and                )
                                         )
ESTATE OF THOMAS DANIEL                  )
CAPEL,                                   )
                                         )
    Plaintiffs,        )
                                         )
    v.                 )
                                         )
LAURA CAPEL,                             )
                                         )
    and                )
                                         )
DOES 1–9,                                )
                                         )
    Defendants.        )

**FILED**

SEP 2 7 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Civil Action No. 16-1636

## MEMORANDUM OPINION
September **27**, 2017 [Dkt. ##11, 12]

The underlying dispute in this case began when Laura Capel ("Ms. Capel" or "defendant") learned that her husband, Thomas Daniel Capel ("Mr. Capel" or "decedent"), had passed away unexpectedly. Ms. Capel was separated, but not divorced, from Mr. Capel at the time, so she was understandably shocked when she discovered, shortly after Mr. Capel's death, that her husband had apparently married Brooke Norman ("Norman"). Ms. Capel accordingly filed suit in North Carolina state court, seeking a declaratory judgment that she was, in fact, Mr. Capel's legal spouse. That declaratory judgment action is ongoing.

1

Plaintiffs Norman, Harrison Capel ("Harrison"), and the Estate of Thomas Daniel Capel (collectively referred to as "plaintiffs") sued Ms. Capel and nine unidentified co-defendants ("Does 1–9") in the District of Columbia, alleging claims under RICO and other state-law torts for events related to decedent's 2016 death. *See* Compl. [Dkt. #1]. Ms. Capel moved to dismiss plaintiffs' complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim under RICO. She alternatively requested a stay of the proceedings pending the outcome of the state court declaratory judgment action.

Upon consideration of the parties' submissions, and the entire record herein, I find that this Court lacks personal jurisdiction over Ms. Capel. Accordingly, defendant's motion to dismiss is GRANTED and plaintiffs' complaint is DISMISSED with prejudice.

## BACKGROUND

Decedent, a medically retired former Navy SEAL, married his third wife, Ms. Capel, in 1999. *See* Def.'s Mot. Dismiss, Ex. B. ¶ 3 [Dkt. #11-2] ("Def. Ex. B"). The two legally separated in approximately 2006. *See* Compl. ¶ 31. In 2014, they signed a Separation & Property Settlement Agreement ("Agreement"), which required Mr. Capel to make monthly payments to Ms. Capel and to maintain her status as a beneficiary of his life insurance until he had paid her "her full alimony payment." *See id.* at ¶ 4; Def. Ex. B. ¶ 10; Compl. Ex. A, Separation & Prop. Settlement Agreement 6–7 ("Agreement") [Dkt. #1-1] ("Agreement"). That "full alimony payment" totaled $504,000 over 14 years, or $400,000 if paid in one lump sum. *See* Agreement 4–5. Mr. Capel made monthly payments to defendant under the terms of the Agreement until his death. *See* Compl. ¶¶ 32–37.

Shortly after the Agreement was signed, Mr. Capel married Norman. *See id.* at ¶¶ 2, 38. At the time of their marriage, Norman was apparently under the impression that Mr. Capel was legally divorced from defendant. *Id.* at ¶¶ 48–50. Indeed, plaintiffs allege that Ms. Capel represented to Norman that she and Mr. Capel were legally divorced. *See id.* ¶¶ 39–46, 225–28.

At the time of the signing of the Agreement—and their subsequent marriage—Mr. Capel and Norman were residents of Washington, D.C. *See id.* ¶¶ 35, 94. Shortly after their marriage, the two moved to North Carolina in late 2014, and they continued to reside there until Mr. Capel's death in May of 2016. *See id.* ¶¶ 35–36. Plaintiff Harrison, decedent's son, is a resident of Utah. *See id.* ¶ 14. Harrison was the named beneficiary of decedent's life insurance policy maintained through the Federal Employees Group Life Insurance ("FEGLI") program. *See id.* ¶ 106.

Upon learning of Mr. Capel's death, defendant contacted various federal agencies based in Washington, D.C. to claim certain benefits stemming from Mr. Capel's military service and subsequent government employment. *See id.* ¶ 103. She also filed a lawsuit in North Carolina state court, seeking a declaratory judgment that she is Mr. Capel's legal spouse. *Id.* ¶ 72. The North Carolina court issued a preliminary injunction preventing either Ms. Capel or Norman from coordinating the interment of decedent's remains and enjoining the payment of the proceeds of decedent's FEGLI life insurance policy pending a final decision on the merits in that case. *See* Def.'s Mot. Dismiss, Ex. C ¶¶ 1–4 [Dkt. #11-3] ("Def. Ex. C"). That lawsuit is currently pending.

Norman subsequently filed her complaint in this Court in August of 2016, alleging that Ms. Capel has engaged in a multi-year "shameful and unjust ruse," whereby she "hid the fact (if true) that she had never been divorced officially from [Mr. Capel]" and "forced" Norman and Mr. Capel "to pay inordinate sums of money over the last two years" for alimony payments. Compl. ¶¶ 123–135. Norman also alleges that Ms. Capel made various defamatory statements about her to mutual acquaintances who reside in the District, including that Norman was Mr. Capel's "'pretend' wife," and that "Norman was not in a loving relationship with [Mr. Capel]." *See id.* ¶¶ 136–140. These alleged actions form the basis of the complaint in this case.

In particular, plaintiffs allege two counts under the Racketeer Influenced and Corrupt Organizations ("RICO") statute, based on Ms. Capel's alleged violation of various federal fraud statutes, *see id.* at ¶¶ 145–61, 163; various common law claims related to the Agreement, *see id.* at ¶¶ 173–74, 181, 192, 196, 211, 223, 231; one count pertaining to defendant's contacting federal agencies to claim decedent's benefits, *see id.* at ¶¶ 205; and two counts related to defendant's alleged defamation of Norman, *see id.* at ¶¶ 220, 245. Ms. Capel is named as a defendant in all counts, and the unidentified defendants are named in six of the twelve counts. Ms. Capel moved to dismiss all claims for lack of personal jurisdiction, and she moved to dismiss the RICO counts for lack of Article III standing and failure to state a claim. *See* Def.'s Mot. Dismiss 1 [Dkt. #11] ("Def.'s Mot."). Defendant also moved to dismiss the common law claims for lack of subject matter jurisdiction, but she subsequently abandoned that defense. *See id.* 18; Def.'s Reply Supp. Mot. Dismiss [Dkt. #14] ("Def.'s Reply"). Alternatively, Ms. Capel requested a stay of the proceedings

in this case until the North Carolina case is resolved. *See* Def.'s Mot. 1. In opposing Ms. Capel's motion, plaintiffs moved for jurisdictional discovery in the event that I find personal jurisdiction over Ms. Capel lacking in this case. *See* Pls.' Mem. Opp'n. to Def.'s Mot. Dismiss 12 n.17 [Dkt. #13] ("Pls.' Mem.").[1]

## STANDARD OF REVIEW

Ms. Capel moves to dismiss plaintiffs' complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Faced with such a challenge, plaintiffs bear the burden of establishing a basis for personal jurisdiction. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). "A plaintiff makes such a showing by alleging specific acts connecting the defendant with the forum." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 121 (D.D.C. 2000) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)). While courts normally address subject-matter jurisdiction before turning to personal jurisdiction, this is not an absolute requirement. *See, e.g., Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577–78 (1999) (affirming dismissal for lack of personal jurisdiction without considering subject-matter jurisdiction where defendant filed motions to dismiss on both grounds); *see also Forras v. Rauf*, 812 F.3d 1102, 1105 (D.C. Cir. 2016) (affirming dismissal for lack of personal jurisdiction without considering defendant's motion to dismiss for lack of subject-matter jurisdiction).

---

[1] Defendant separately moved for a protective order relating to a discovery letter sent to her employer in Pennsylvania. *See* Def.'s Mot. Protective Order [Dkt. # 12]. Plaintiffs opposed that motion. *See* Pls.' Opp'n to Def.'s Mot. Protective Order [Dkt # 15]. Because this Memorandum Opinion grants defendant's Motion to Dismiss—and dismisses this case with prejudice—the litigation hold letter that is the subject of Ms. Capel's Motion for a Protective Order is rendered invalid, and no similar letters can be issued in this case in the future. Defendant's Motion for a Protective Order is accordingly denied as moot.

Plaintiffs opposing such a challenge must plead specific facts to establish personal jurisdiction and cannot rely on "[c]onclusory statements." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017) (affirming dismissal) (quoting *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). When considering a motion to dismiss for lack of personal jurisdiction, "[t]he court may receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed. 2017). Importantly, I must resolve factual discrepancies in favor of plaintiffs. *See N.Y. Zoological Soc'y*, 894 F.2d at 456.

## DISCUSSION

Ms. Capel asserts that plaintiffs have not alleged sufficient facts to justify the Court's exercise of specific jurisdiction over her in this case. Def.'s Mot. 3. Specific jurisdiction over a non-resident defendant is appropriate where "there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "A federal court normally looks . . . to the long-arm statute of the State in which it sits to determine whether" exercise of personal jurisdiction is warranted. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105 (1987). If a court finds that the long-arm statute applies, it then determines whether "an exercise of jurisdiction would comport with constitutional limitations." *Forras*, 812 F.3d at 1105–06. Importantly, the defendant

must have certain "minimum contacts" with the forum such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). And a defendant's contacts must be "with the forum State itself, not . . . with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

Here, plaintiffs contend that two sections of the Washington, D.C. long-arm statute support the exercise of personal jurisdiction over Ms. Capel. First, they argue that she was "transacting business" in the District under D.C. Code § 13-423(a)(1) when she entered into the Agreement with Mr. Capel while he was a D.C. resident. *See* Pls.' Mem. 9–11. Second, they insist that Ms. Capel "caused tortious injury in the District of Columbia by acts or omissions in the District of Columbia" under § 13-423(a)(3). *See id.* at 12. Plaintiffs also assert that Ms. Capel cannot rely on the government contacts exception to the D.C. long-arm statute to evade personal jurisdiction in this case. *Id.* at 15. Unfortunately for plaintiffs, I cannot agree.

## A. The "Transacting Any Business" Provision

First, Ms. Capel's entering into the Agreement does not constitute "transacting business" within the meaning of the statute. Other courts in this district have held that "contacts falling under the 'transacting any business provision' usually must be commercial." *West v. Holder*, 60 F. Supp. 3d 190, 195 (D.D.C. 2014). And the D.C. Court of Appeals has similarly held that, to establish personal jurisdiction under the "transacting business" provision, "the plaintiff must show that the defendant has purposefully engaged in some type of *commercial or business-related activity* directed at

District residents. *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001) (emphasis added). Plaintiffs do not cite—and this Court has not found—a single case where a family-law contract was treated as a business transaction within the meaning of D.C. Code § 13-423(a)(1).

Plaintiffs argue that Mr. Capel was a D.C. resident at the time that the Agreement was executed, and thus that there were sufficient minimum contacts with D.C. to establish personal jurisdiction. *See* Pls.' Mem. 11. Plaintiffs' own evidence, however, contradicts that assertion; the Agreement explicitly states that both decedent and defendant were residents of Pennsylvania at the time of its execution. *See* Agreement 1. But even if Mr. Capel were a D.C. resident at the time the Agreement was executed, that fact would be insufficient to establish personal jurisdiction. *See Helmer v. Doletskaya*, 393 F.3d 201, 206 (D.C. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985), for the proposition that "[t]he Supreme Court has held that a contract with a resident of a forum does not by itself establish minimum contacts with the forum"). Thus the fact that Mr. Capel *may* have been a District of Columbia resident when he entered into the Agreement is not sufficient to establish personal jurisdiction over Ms. Capel in this suit.

## B. The "Tortious Activity" Provision

Second, plaintiffs' reliance on the "tortious activity" provision of the D.C. long-arm statute is misplaced because that provision applies only where the alleged misconduct took place in the District. Plaintiffs allege that Ms. Capel: (1) "deliberately made fraudulent misrepresentations and omissions to Dan Capel and Brooke Norman

when they were D.C. residents"; (2) "purposefully targeted Brooke Norman's professional contacts located in D.C."; and (3) "reached into the jurisdiction by contacting and submitting fraudulent claims for benefits to various agencies." Pl's Mem. 12 (citing Compl. ¶¶ 39–53, 140, 103–106). As a result of these allegedly tortious actions, plaintiffs allege that Norman suffered reputational damage and that she and Mr. Capel suffered financial damage. *See id.* at 10–11. But plaintiffs' allegations of defamation do not establish an injury "in the District," within the meaning of the long-arm statute.

Our Circuit has held that D.C. Code § 13-423(a)(3) "requires that both act and injury occur in the District of Columbia," and that "the situs of the injury is the location of the original event which caused the injury, *not* the location where the resultant damages are subsequently felt by the plaintiff." *Helmer*, 393 F.3d at 208 (emphasis added) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)). In the defamation context, the relevant act is the "uttering [of] defamatory statements." *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 220 (D.C. Cir. 1986). And merely "alleging that 'the brunt of the injury, in particular the damage to [plaintiff's] professional reputation, occurred in Washington, D.C.' falls far short of triggering subsection (a)(3) of the long-arm statute." *Forras*, 812 F.3d at 1107 (quoting *Moncrief*, 807 F.2d at 221 n.7).

Here, plaintiffs have not alleged that Ms. Capel or Norman were in the District of Columbia when the defamatory statements were allegedly made. Similarly, the fact that Mr. Capel may have lived in D.C. when Ms. Capel allegedly made misrepresentations to

him is insufficient to establish personal jurisdiction because the relevant act occurred outside of the District. *See Helmer*, 393 F.3d at 208. And our Circuit has made clear that defamatory statements made via a telephone call from a non-resident into the District are not sufficient to establish personal jurisdiction under subsection (a)(3). *Tavoulareas v. Comnas*, 720 F.2d 192, 193–94 (D.C. Cir. 1983) (Scalia, J.) (affirming dismissal for lack of personal jurisdiction where non-resident defendant placed phone calls from outside the District to individuals within the District). Thus, plaintiffs have failed to state facts sufficient to establish personal jurisdiction over Ms. Capel pursuant to the "tortious activity" provision of the statute.

## C. The Government Contacts Exception

Finally, plaintiffs rely on the fact that Ms. Capel contacted several government agencies headquartered within the District as another basis for exercising personal jurisdiction over her. Compl. ¶¶ 104–108. Unfortunately for plaintiffs, the government contacts exception to the D.C. long-arm statute forecloses plaintiffs' argument. How so?

Under D.C. law, the government contacts exception "precludes the assertion of personal jurisdiction over a non-resident whose only contact with the District of Columbia is with Congress or a federal agency." *Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 75 (D.D.C. 1992), abrogated on other grounds by *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008). Here, plaintiffs allege only that Ms. Capel engaged in communications with various government agencies located in Washington, D.C. The government contacts exception thus clearly applies to preclude personal jurisdiction based on these contacts.

Plaintiffs counter that defendant's conduct falls within the "instrumentality of fraud" exception to the government contacts exception. *See* Pls.' Mem. 15. This exception allows the District to exercise personal jurisdiction over a defendant if the defendant used the federal government to engage in fraud. Thus, the government contacts exception would not protect a defendant who fraudulently caused the Government to take adverse action against a plaintiff. *See Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1134 (D.C. 2012). To qualify under this exception to the government contacts exception, plaintiffs must plead—*with particularity*—the "time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citing Fed. R. Civ. P. 9(b)). Plaintiffs have plainly failed to satisfy their burden of pleading on this point.

Among other pleading deficiencies, plaintiffs have not alleged any facts that could show Ms. Capel used the Government as an instrumentality of fraud or that there was any unwarranted Government action taken against plaintiffs as a result. Plaintiffs assert in their opposition that Ms. Capel "cause[d] federal agencies to withhold payments to which Plaintiffs are immediately entitled," Pls.' Mem. 15, but they cite no facts in the complaint to support this argument. And although Harrison alleges that he stopped receiving life insurance payments after Ms. Capel contacted an unidentified agency, *see* Compl. ¶¶ 106–07, the record clearly establishes that any delay or denial of life insurance benefits is a result of the preliminary injunction entered in North Carolina state court. *See* Def. Ex.

11

C ¶ 2.  Because plaintiffs have not pleaded facts sufficient to show that defendant used the government as an instrumentality of fraud, the government contacts exception to the D.C. long-arm statute applies to preclude personal jurisdiction in this case.[2]

### D. Jurisdictional Discovery

In a footnote to their opposition to Ms. Capel's motion to dismiss, plaintiffs requested an opportunity to "conduct discovery and depose Defendant regarding the nature of her contacts with the District of Columbia" in the event that this Court determined that it lacked jurisdiction over Ms. Capel.  Pls.' Mem. 12 n.17.  I will construe plaintiffs' afterthought in this regard as a motion for jurisdictional discovery.  For the following reasons, however, that motion must be denied.

Although "[t]his Circuit's standard for permitting jurisdictional discovery is quite liberal," *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003), jurisdictional discovery "is justified only if the plaintiff reasonably 'demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 89 (D.D.C. 2009) (quoting *GTE New Media Servs.*, 199 F.3d at 1351).  Here, plaintiffs have fallen far short of this threshold.  Plaintiffs' footnote references defendant's "contacts with the District of Columbia," but plaintiffs provide no further allegations as to what specific contacts they believe exist, beyond those in the complaint.  Pls.' Mem. 12 n.17.  Similarly, nowhere in their pleadings do plaintiffs

---

[2] Because I conclude that I lack personal jurisdiction over Ms. Capel in this case, I need not—and do not—address her arguments regarding lack of Article III standing and failure to state a claim, nor do I address her alternative request to stay these proceedings.  Def.'s Mot. 11–23, 25.

represent that additional jurisdictional discovery would enable them to satisfy the "instrumentality of fraud" exception to the government contacts exception to the D.C. long-arm statute. This lack of specificity regarding what facts plaintiffs believe they will establish through jurisdictional discovery dooms their motion. *See Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003) ("Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendants] to the burden and expense of discovery.'" (alterations in original) (quoting *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 524 n.4 (D.D.C. 1995))), *aff'd*, 2003 WL 22971974 (D.C. Cir. Dec. 11, 2003). Plaintiffs' motion is accordingly denied.[3]

## CONCLUSION

For all the reasons stated herein, defendant's Motion to Dismiss is GRANTED, and plaintiffs' complaint is DISMISSED with prejudice. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[3] In their complaint, plaintiffs allege the existence of nine unidentified co-defendants who allegedly "acted in concert with Defendant Laura Capel in connection with racketeering, fraud, and other nefarious acts." Compl. ¶ 18. Importantly, the complaint makes no allegations with respect to these co-defendants' identities, locations, or any other facts that would establish personal jurisdiction over them. Because of the paucity of allegations about these mysterious co-defendants, I conclude that jurisdictional discovery would not reasonably permit plaintiffs to uncover the true identities of Does 1–9.